IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GERALD D. FULLER | * | |
| Plaintiff | * | |
| v | * | Civil Action No. WMN-15-2524 |
| WARDEN FRANK B. BISHOP, JR., *et al.* | * | |
| Defendants | * | |

\*\*\*

**MEMORANDUM**

In response to the above-entitled civil rights complaint, Defendants filed a Motion to Dismiss or for Summary Judgment. ECF 18. Plaintiff opposes the motion. ECF 27, 28. The Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, Defendants' motion, construed as a Motion for Summary Judgment,[1] shall be granted.

**Background**

Complaint Allegations

Plaintiff Gerald Fuller, an inmate incarcerated in North Branch Correctional Institution (NBCI), alleges that money is improperly deducted from his prison account for payment of fees in this Court and the Fourth Circuit Court of Appeals. He claims that Defendant Larry D. Hanlin, who works in the accounting office in NBCI, is violating 28 U.S.C. §1915(b)(2) by deducting funds Fuller receives from family, refunds, and "stale dated checks" for payment of court fees. Fuller further suggests that the money deducted from his account is not being used for payment of filing fees because he does not receive receipts from the federal courts for all of

---

[1] Defendants' dispositive submission will be treated as a Motion for Summary Judgment under Federal Rule of Civil Procedure 56 because materials outside the original pleadings have been considered. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

the deductions. He contends that the deductions from his account for filing fees should only be deducted from income earned from institutional jobs, not gifts, refunds, or uncashed checks. Additionally, Fuller asserts that the deductions exceed 20% of his monthly income. Fuller also claims that he is entitled to receipts for payment of filing fees for income tax purposes. ECF 1 at p. 4.

Fuller concludes that the alleged improper deductions from his account is the result of a conspiracy that likely includes staff working for this Court. He seeks punitive, compensatory, and nominal damages totaling 3.75 million dollars as well as an order requiring all funds deducted from his prison account that were not generated by his institutional job be returned. ECF 1 at p. 5.

## Defendants' Response

Defendants provide background information regarding the inmate account system utilized in the Maryland Division of Correction facilities, including NBCI. ECF 18.

Inmates in Maryland are provided an inmate bank account, which consists of a "Reserve" Balance and a "Spending" Balance. The Reserve Balance provides the inmate with cash upon his or her release and maintains a maximum balance of up to $50.00. The Spending Balance contains all other funds and can be used to purchase things during the time an inmate is incarcerated. Unused money in the Spending Balance is given to the inmate upon his release from prison. ECF 18 at Ex. 1, ¶ 3. Inmates are limited to spending $85 per week on commissary items. *Id.* at pp. 25, 32.

On August 1, 2014, the Department of Public Safety and Correctional Services (DPSCS), switched its accounting system that utilizes software powered by Keefe Commissary Network, Inc. The new software modified the manner in which funds owed for filing fees were collected

by immediately withholding 20% of any funds deposited into an inmate account if filing fees are owed. Funds are not withheld if the balance in the spending account is below $10.00. The money is held until the next month when it is then remitted to the federal court system for payment of fees owed. The process is computer automated. ECF 18 at Ex. 1, ¶ 4 and 5.

The accounting system in place before August 1, 2014, did not deduct money as it was deposited into the account; rather, the deduction took place the following month when filing fees were paid. The delay allowed inmates the opportunity to spend the money before the money could be collected. The new system prevents this evasion of financial obligations to the court system. ECF 18 at Ex. 1, ¶ 6.

Defendants confirm that the source of the money deducted and remitted to the court is not limited to income earned by the inmate from his prison job. ECF 18 at Ex. 1, ¶ 7. Pursuant to Executive Directive ADM 245.001.04(B)(2), earnings are defined as funds deposited into "an inmate account from any source." *Id.* at p. 23, *see also id.* at p. 31 (Maryland Division of Correction Directive, DOC.245.001). Inmates may obtain an account statement reflecting deductions and deposits by submitting a request in writing. ECF 18 at Ex. 1, ¶ 7.

Defendant Larry D. Hanlin is the Fiscal Services Chief II for the DPSCS Northern Region and assists in overseeing the accounting for NBCI. He states in his declaration under oath that he neither personally accessed Fuller's bank account nor defrauded Fuller of funds from his account. ECF 18 at Ex. 2 ¶ 3. Defendant Warden Frank Bishop states in his declaration under oath that he has no personal involvement with managing inmate financial accounts, nor has he accessed Fuller's account. ECF 18 at Ex. 3, ¶ 2 and 3.

With regard to the filing fees owed by Fuller, Defendants state that as of August 1, 2014, the date the new accounting system was put into place, Fuller owed $1,264.79 in federal filing

fees. ECF 18 at Ex. 1, ¶ 8. Fuller incurred another $505 in federal filing fees between August 1, 2014 and August 1, 2015. *Id*. During that one-year period, $411.46 was deducted from his account for payment of federal filing fees, leaving a balance of $1,358.33 for federal filing fees owed. *Id*. at pp. 8 – 20. The $411.46 deducted for the filing fees occurred during the months of July and August, 2015. In July, two deposits were made to Fuller's account; one for $50 on July 2, 2015 and one for $350 on July 14, 2015. On July 2, 2015, 20% of the $50 deposit ($10) was withheld from Fuller's account and on July 14, 2015, 20% of the $350 deposit ($70) was withheld and later paid for federal filing fees. Another deduction occurred on July 29, 2015, because Fuller filed a notice of appeal in *Fuller v. Shearin*, Civil Action WMN-14-1474 (D. Md.) and he was required to pay $27.48 as the initial partial filing fee for the appeal. After the deductions were taken, Fuller had a balance of $15.65 in his spending account. ECF 18 at Ex. 1, ¶¶ 9, 10 and pp. 8-9. During the month of August 2015, $49.65 was deposited into Fuller's account and 20% was withheld ($9.93) and later paid towards outstanding federal filing fees. *Id.* at ¶ 11 and p. 8.

## Standard of Review

<u>Summary Judgment</u>

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

<u>28 U.S.C. §1915</u>

Under 28 U.S.C. §1915, which governs proceedings filed in forma pauperis in any court of the United States, a prisoners are required to pay federal filing fees as follows:

> (1). . .[T]he prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of—
>
> > (A) the average monthly deposits to the prisoner's account; or
> >
> > (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.
>
> (2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The *agency having custody of the prisoner*

> *shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.*

28 U.S.C.A. § 1915 (b) (emphasis supplied).

This provision was passed as a part of the Prison Litigation Reform Act of 1995 (PLRA) which was a response to "a sharp rise in prisoner litigation." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). "[T]he PLRA . . . installed a variety of measures 'designed to filter out the bad claims [filed by prisoners] and facilitate consideration of the good.'" *Bruce v. Samuels*, __ U.S. __, 136 S.Ct. 627, 629 (2016) quoting *Coleman v. Tollefson*, 575 U.S. __, __, 135 S. Ct. 1759, 1762 (2015) (brackets in original). Under the payment scheme established, if a prisoner incurs additional filing fee obligations before the first is paid, the additional fees may be deducted simultaneously. *Bruce*, 136 S.Ct. at 631. Thus, if a prisoner files a second, third, fourth, or fifth civil case while filing fees are still owed on the first-filed case, a 20% deduction of the prior month's income occurs for all of the cases filed. *Id.* at 632, *see also Patel v. Bonner*, 2011 WL 2267714, at *1 (E.D.N.C. June 8, 2011) (sequential collection is limited to twenty percent of preceding month's income no matter how many cases are filed; simultaneous collection involves twenty percent of income for each case filed).

The rationale behind requiring prisoners to pay the filing fee was explained by the Fourth Circuit Court of Appeals shortly after the PLRA was passed:

> Requiring prisoners to make economic decisions about filing lawsuits does not deny access to the courts; it merely places the indigent prisoner in a position similar to that faced by those whose basic costs of living are not paid by the state. Those living outside of prisons cannot file a lawsuit every time they suffer a real or imagined slight. Instead, they must weigh the importance of redress before resorting to the legal system.

*Roller v. Gunn*, 107 F.3d 227, 233 (4th Cir. 1997).

**Analysis**

In his Opposition Response Fuller asserts that the State is redefining the meaning of income by construing all sources of money to be included in what is authorized for collection under the PLRA. ECF 28 at p. 3. He points to a "contract" he signed on July 2, 2016, sent to him by the Fourth Circuit Court of Appeals in the context of Civil Action WMN-14-1474, authorizing collection of "monthly payments of 20 percent of my preceding month's income" as proof that any other funds collected violates that agreement. ECF 27-1. Fuller takes the position that the State's interpretation of the "income" as inclusive of all money received regardless of its source renders the word ambiguous. ECF 28 at p. 4. Fuller further argues that if Congress had intended that funds that emanate from "non-income sources" to be included in the 20% deduction permitted, they would have specified all funds rather than using the word "income." ECF 29 at pp. 2 – 3.

If Fuller's suggested limitation on the term "income" were to be adopted for purposes of enforcing the PLRA fee collection process, the entire purpose of the statute would be rendered meaningless. Income is not a term of art and does not have the limited meaning Fuller suggests. While there are limitations on what is regarded as income for purposes of federal income taxes,[2] those limitations do not apply where, as here, there is no legislative definition requiring such a limitation. The PLRA places responsibility for collecting federal filing fees on the custodian of the prisoner who files the federal cause of action. As explained by Defendants, the system in place has corrected a loophole that allowed prisoners to spend down the account before the partial payments could be collected. Were this Court to hold that only funds generated from a prison job may be deducted, the collection of fees would again be easily avoided through intentional loss of the job. Moreover, wages for prison jobs are nominal at best as the purpose of

---

[2] Even the definition of "gross income" for purposes of the tax code is not as limited as Fuller's suggested definition for income. *See* 26 U.S.C. §61 (defining gross income as "all income from whatever source derived").

prison job assignments is to prevent idleness and promote rehabilitative efforts. The State provides for the basic necessities needed; prison job wages are provided for incidental provisions prisoners may purchase in the commissary. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (the Constitution requires inmates to be provided "with adequate food, clothing, shelter, and medical care.").

Fuller's claim that more than 20% of the funds he received were deducted from his account is also without merit. The simultaneous deduction of filing fee payments is authorized under the PLRA. *See Bruce*, 136 S. Ct. at 629. His allegation that he has been defrauded of money or that there exists a conspiracy to do so is unsupported by the objective evidence before this Court. Defendants are entitled to judgment in their favor as a matter of law and their Motion for Summary Judgment shall be granted by separate Order which follows.

_____/s/_____
William M. Nickerson
Senior United States District Judge

Dated: January 27, 2017